# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| REGINALD NICHOLSON, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | Case No. CIV-08-227-F |
| | ) | |
| JUSTIN JONES, | ) | |
| | ) | |
| Respondent. | ) | |

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner appearing pro se, brings this action seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B) and (C). Respondent has filed a response to the petition [Doc. No. 12], and the state court transcripts. Petitioner has filed a reply [Doc. No. 20], and the case is at issue. For the reasons set forth herein, it is recommended that the petition be denied.

Petitioner is challenging his conviction, after jury trial, of trafficking in illegal drugs - cocaine base - (Count One), possession of proceeds derived from a violation of the Uniform Controlled Dangerous Substances Act (Count Two), and possession of a firearm while committing a felony (Count Three), all after former conviction of two or more felony

convictions.[1] Case No. CF-2003-5945, District Court of Oklahoma County. Petition, p. 2[2]; *see also* Tr., p. 243. In accordance with the jury's recommendation, Petitioner was sentenced to life imprisonment without the possibility of parole on Count One, twelve hundred years imprisonment on Count Two and four hundred fifty years imprisonment on Count Three, and the trial court ordered that the terms of imprisonment be served consecutively. *Id.* The OCCA rejected Petitioner's claims on direct appeal and affirmed his judgments and sentences. Response, Ex. 3 (OCCA Opinion in *Nicholson v. State*, Case No. F-2005-985).[3] Apparently, Petitioner filed no applications for post-conviction relief. Petition, p. 4.

In his federal habeas petition Petitioner raises the three claims he raised on direct appeal.[4] *See generally* Response, Ex. 1. In Ground One Petitioner alleges that he was denied

---

[1] Petitioner had four prior drug related felony convictions. Tr., pp. 225-26; 229-30.

[2] The form petition begins on page two.

[3] Judge Charles Chapel concurred in affirming Petitioner's convictions but dissented to the sentences he received, finding that the sentences should be reduced and should be served concurrently. Response, Ex. 3, page following p. 6. Judge Chapel stated specifically that Petitioner's sentence of life without parole violated the Oklahoma State constitutional prohibition against cruel and unusual punishment. *Id.*

[4] In his reply, Petitioner alleges for the first time that the sentence imposed in Count Three for possession of a firearm during the commission of a felony was improperly enhanced. Petitioner's Reply, pp. 2-3. This claim, raised for the first time in a reply brief, has not been properly raised and therefore has not been addressed. *See United States v. Mora*, 293 F.3d 1213, 1216 (10th Cir. 2002) ("we [do not] consider arguments raised for the first time in a reply brief"); *Burdick v. Klinger*, No. 98-6425, 1999 WL 495634, * 1 (10th Cir. July 14, 1999) (declining to consider state habeas petitioner's equal protection claim, which was raised for the first time in his reply to the state's response in the district court) (Unpublished decisions are cited as persuasive authority in accordance with Tenth Circuit Rule 32.1.).

2

his Sixth Amendment right to compulsory process because the trial court refused to allow him to call an available witness. Petition, p. 6. Petitioner alleges in Ground Two that his home was illegally searched in violation of his rights under the Fourth and Fourteenth Amendments. Petition, p. 7. In Ground Three, Petitioner alleges that the evidence is insufficient to sustain his conviction of possession of a firearm while committing a felony. Petition, p. 9.

With respect to Grounds One and Three, Respondent contends that Petitioner is not entitled to habeas relief because the OCCA's rejection of these claims was not contrary to or an unreasonable application Supreme Court precedent. Respondent further contends that Petitioner's Fourth Amendment claim in Ground Two was fully and fairly litigated in state court and therefore habeas relief is unavailable pursuant to *Stone v. Powell*, 428 U.S. 465, 494 (1976).

**Factual Background**

The facts of the case, as stated in the OCCA's opinion, are as follows:

On October 21, 2003, police officers responded to a burglar alarm at [Petitioner's] residence. [Petitioner] also responded to a cell phone alert and arrived at the house shortly after the police. After entering the home to search for an intruder, an officer saw an open shoe box in the bathroom containing what appeared to be a large quantity of cocaine base, a large amount of cash, and a .40 caliber Glock pistol. The officer exited the house and placed [Petitioner] and his companions in custody.

[Petitioner] later signed a waiver form consenting to a search of the premises. This search uncovered razor blades and Pyrex glassware bearing cocaine residue, digital scales, and "kilo"-size zip lock baggies. Officer Harper read [Petitioner] the *Miranda* warnings while [Petitioner] sat detained in a scout car. [Petitioner's] initial answers to questions about the drugs were ambiguous.

3

> Harper terminated the interview. While Harper stood waiting outside the car, [Petitioner] knocked on the window and asked to talk. Harper reminded [Petitioner] of the *Miranda* warning, and then "asked [Petitioner] was the cocaine, the money, and the gun specifically his and he said 'Yes, it was. No one else is involved.'" [Petitioner] eventually explained to police that he had been increasing his cocaine business by buying a kilogram quantity of cocaine HCL (powder) and cooking cocaine base, which he intended to distribute for a larger profit.
>
> In his defense, [Petitioner's] girlfriend testified that [Petitioner] had bought the residence in question but was not yet living there. She had never been to the house, but said [Petitioner] allowed others access to it. The two were expecting a child at the time of his arrest. [Petitioner] was living with her while gradually furnishing the house, with the expectation they would move into it when the lease on her apartment terminated. [Petitioner] did not testify.

Response, Ex. 3, pp. 2-3. The OCCA's findings of fact are presumed correct unless rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

**Standard Governing Habeas Corpus Review**

Where a petitioner's claims have been adjudicated on the merits in state court, this Court may grant habeas corpus relief only if that adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of evidence presented in the State court proceeding. 28 U.S.C. § 2254(d)(1) and (2). Under this standard, judicial review is directed to the result of the state appellate court's decision, not its reasoning. *See Gipson v. Jordan*, 376 F.3d 1193, 1197 (10th Cir. 2004) ("[W]e defer to the [state court's] decision unless we conclude that its result - not its rationale - is 'legally or factually unreasonable'").

A state court decision is "contrary to" clearly established federal law for purposes of

§ 2254 if "the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or if "the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from" the result reached by the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000). A state court decision involves an "unreasonable application" of federal law if "the state court identifies the correct governing legal principle from [Supreme Court] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "AEDPA's conception of objective unreasonableness lies 'somewhere between clearly erroneous and unreasonable to all reasonable jurists.'" *House v. Hatch*, 527 F.3d 1010, 1019 (10th Cir. 2008) (quoting *Maynard v. Boone*, 468 F.3d 665, 670 (10th Cir. 2006)), *cert. denied*, 129 S.Ct. 1345 (2009). "Thus, 'only the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254.'" *Id.* (quoting *Maynard*, 468 F.3d at 671)). In conducting this deferential inquiry, the Court presumes that the state court factual findings are correct, and the burden of rebutting this presumption by clear and convincing evidence is placed on the petitioner. *See* 28 U.S.C. § 2254(e)(1); *Smith v. Mullin*, 379 F.3d 919, 924-25 (10th Cir. 2004).

## DISCUSSION

### I. Exclusion of Defense Witness - Ground One

Citing the Fifth and Fourteenth Amendments, Petitioner alleges in Ground One of his petition that the trial court committed reversible error in refusing to allow Petitioner to call an available witness. Petition, p. 6. For supporting facts, Petitioner has merely referred the

5

Court to his direct appeal brief.

The issue was addressed by the trial court on the morning of trial in a hearing regarding the potential testimony of a witness, Lennie Mathis, who had been subpoenaed by Petitioner and who was purportedly going to testify that the drugs found in Petitioner's residence belonged to Mathis, not Petitioner.[5] Tr., pp. 8-9. At that time, Mathis was a detainee at the Oklahoma County Detention Center charged with capital murder. *Id.* Mathis and his criminal defense counsel appeared at the hearing together with Jim Hughes, an attorney appointed for Mr. Mathis for purposes of the hearing.[6] Mr. Hughes advised the court that he had met with Mathis and that in his opinion Mathis was incompetent and that he intended to give perjured testimony and then commit suicide. Tr., pp. 11-13. The court ruled that Mathis would not be allowed to testify based on the information that he planned to give perjured testimony and the fact that his competency had been questioned.[7] Tr., pp. 13-14.

On direct appeal, Petitioner alleged that the trial court's exclusion of Mathis'

---

[5] Prior to taking any testimony at this hearing, the trial judge announced that the hearing was being held "because of a potential conflict with a witness." Tr., p. 8.

[6] Because both Petitioner and Mathis were represented by the public defender's office, the trial court appointed Mr. Hughes to represent Mathis for "narrow purpose" of advising Mathis of his rights and options with regard to the subpoena. Tr., p. 9.

[7] In response to a question by the trial judge, Mr. Hughes stated that he believed Mathis was not legally competent. Tr., p. 11. The trial court instructed Hughes to prepare a "competency package" for the purpose of having Mathis evaluated. Tr., p. 13. However, the court denied defense counsel's request for a continuance pending such determination; the court made it clear that regardless of his competency, Mathis would not be allowed to take the stand to present perjured testimony. Tr., pp. 19-20.

6

testimony violated his right to due process, specifically his federal and state constitutional right to compulsory process for obtaining witnesses in his favor. Response, Ex. 1, pp. 9-11. The OCCA rejected this claim, finding that the trial court did not abuse its discretion in refusing to allow Mathis to testify. Response, Ex. 3, p. 3. Citing *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973) and *Crane v. Kentucky*, 476 U.S. 683, 690 (1986), the OCCA recognized that a criminal defendant has a constitutional right to present witnesses in his own defense and to present a complete defense. *Id.* The OCCA also noted that Oklahoma law had long held that "a criminal defendant may show, by any legal evidence, that some other person committed the crime with which he is charged, and that he is innocent of any participation in it." *Id.* (citing *Irvin v. State*, 146 P. 453 (Okla. Crim. App. 1915)). The OCCA also noted, however, that such evidence "must connect such other person with the fact; that is some overt act on the part of another towards the commission of the crime itself. There must be evidence of acts or circumstances that tend clearly to point to another, rather than the accused." *Id.* (citing *Gore v. State*, 119 P.3d 1267 (Okla. Crim. App. 2005)). In applying these precedents, the OCCA concluded that "[b]eyond the fact that [Petitioner] subpoenaed Mathis and badly wanted to call him as a witness, the record contains no facts that would "connect such other person with the fact," or provide "evidence of acts or circumstances that tend clearly to point to another, rather than the accused." *Id.*, p. 4. Recognizing that "[e]xclusion of a proposed defense witness based on credibility is rarely appropriate[,]" the OCCA found that "counsel for Lennie Mathis discovered and forthrightly stated Mathis' intention to commit perjury in [Petitioner's] defense," and further found that

7

"[n]othing in the record casts the slightest doubt on the accuracy of counsel's representation to the Court." *Id.*

The relevant question for this Court is whether the decision of the OCCA affirming the exclusion of Mr. Mathis's testimony was contrary to or an unreasonable application of Supreme Court precedent in violation of Petitioner's federal constitutional rights. 28 U.S.C. §2254(d). Although state evidentiary rulings do not ordinarily raise federal constitutional issues, *Estelle v. McGuire*, 502 U.S. 62, 68 (1991), an exception has been found where a state court applies a state's evidentiary rule unfairly to prevent a defendant from presenting evidence that is critical to his defense. *See Romano v. Gibson*, 239 F.3d 1156, 2266 (10th Cir. 2001)(citing *e.g., Chambers v. Mississippi,* 410 U.S. 284, 302, (1973); *Green v. Georgia,* 422 U.S. 95, 97 (1979); and *Washington v. Texas*, 288 U.S. 14, 16, 23 (1967)). "Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" *Crane v. Kentucky*, 476 U.S. 683, 690 (1986); *see also Washington*, 388 U.S. at 19 (holding the right to present witnesses and establish a defense is "a fundamental element of due process of law"). A defendant's right to present relevant evidence is not unlimited, however, but rather is subject to reasonable restrictions. *See Taylor v. Illinois*, 484 U.S. 400, 410 (1988); *Rock v. Arkansas*, 483 U.S. 44, 55 (1987); *Chambers v. Mississippi*, 410 U.S. 284, 295 (1973). The Supreme Court has stated that the Constitution permits judges "to exclude evidence that is 'repetitive . . . , only marginally relevant' or poses an undue risk of 'harassment, prejudice, [or]

confusion of the issues.'" *Crane*, 476 U.S. at 689-690 (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986)).

"[T]o determine whether a defendant was unconstitutionally denied his or her right to present relevant evidence, [the court] must balance the importance of the evidence to the defense against the interests the state has in excluding the evidence." *Richmond v. Embry*, 122 F.3d 866, 872 (10th Cir. 1997). Further,

> [T]o establish a violation of . . . due process, a defendant must show a denial of fundamental fairness . . . . It is the materiality of the excluded evidence to the presentation of the defense that determines whether a petitioner has been deprived of a fundamentally fair trial. Evidence is material if its suppression might have affected the outcome. In other words, material evidence is that which is exculpatory-evidence that if admitted would create reasonable doubt that did not exist without the evidence.

*Ellis v. Mullin*, 326 F.3d 1122, 1128 (10th Cir. 2002) (quoting *Richmond*, 122 F.3d at 872).

Having carefully reviewed the record in this case, the undersigned finds no support in the record for Petitioner's claim that he was denied a fundamentally fair trial by the exclusion of Mathis's testimony. The Court specifically finds that Petitioner has not demonstrated that such testimony was material or critical to Petitioner's defense. Although Petitioner alleges that the testimony of Mathis would have established his "factual innocence," Petitioner's Reply p. 7, he fails to allege nor does the record reflect any evidence regarding the substance of the testimony which Mathis purportedly intended to offer at trial.[8]

---

[8]Petitioner claimed on direct appeal that Mathis "**apparently** was going to testify that Petitioner was not involved with the items found at the house on the day in question." Response, Ex. 1, p. 10 (emphasis added). However, Petitioner admitted that there was "no
(continued...)

9

Rather, it appears the sole source of Petitioner's information in that regard was the trial judge's statement that "Mr. Mathis intended to testify and 'take the rap' [Tr. 20] and 'help his homeboy, Mr. Nicholson, by taking the blame for this.' [Tr. 20]."[9] *Id.* Without a record regarding the substance of the excluded testimony, Petitioner cannot make the necessary showing that the excluded testimony was critical, exculpatory and therefore material evidence. *See* Romano, 239 F.3d at 1168 ("[W]e need ask no more than whether the trial court's application of this state evidentiary rule excluded critical exculpatory evidence.").

Alternatively, even if the court were to assume that Mathis would have testified that the drugs found in Petitioner's home belonged to Mathis, the necessary showing has not been made that such testimony, if admitted, would have by necessity exculpated Petitioner. *See Richmond,* 122 F.3d at 874. First, such testimony, if believed, might at best demonstrate that others were involved with Petitioner in his admitted drug dealing. Such testimony would not necessarily have established a defense to Petitioner's guilt. Although the jury instructions

---

[8](...continued)
testimony on the record directly from Mr. Mathis." *Id.* at n. 8 and p. 7, n. 6. Nor is there any testimony or proffer by anyone on the record regarding the substance of Mr. Mathis's proposed testimony.

[9]The record offers no explanation for the source of the judge's information in this regard. Nor does the record identify the source for the judge's statement at the outset of the *in camera* hearing:
> "Now, the word that I got this morning was that Mr. Mathis allegedly had made a statement or written a letter or had in some way intimated that the drugs involved in Mr. Nicholson's case were, in fact, Mr. Mathis' and that's why the Defendant had subpoenaed him.

Tr., p. 9.

have not been included in the record, it is apparent based on the prosecutor's closing argument that the jury was instructed that Petitioner could incur criminal liability if he aided or abetted in the commission of the crimes.[10] Under Oklahoma law, [a]ll persons concerned in the in the commission of a crime, . . . whether they directly commit the act constituting the offense, or aid and abet in its commission, though not present, are principals." Okla. Stat. tit. 21, § 172. Even assuming Mathis had testified that the drugs belonged to him and not to Petitioner, there was evidence that Petitioner aided others in the commission of a criminal offense by encouraging and/or knowingly allowing others to keep drugs in a house which he controlled.[11] Therefore, Mathis's testimony would not necessarily have been exculpatory.

In addition, given the strong evidence of Petitioner's guilt as reflected by the entire record, the undersigned is not persuaded that such testimony, if admitted, would have created a reasonable doubt that did not exist otherwise. *See Richmond*, 122 F3d at 874. The evidence was undisputed that on October 21, 2003 at 6:00 p.m. Oklahoma City Police Officer Marvin Smith was dispatched to a residence at 827 Northwest 114th Street in Oklahoma City in response to an alarm activation. Tr., p. 49. A gun, illegal drugs, and money were found together in an open shoebox on a shelf in the bathroom of the residence, and other items

---

[10]In his closing argument the prosecutor explained that based on the court's instructions a person is a principal if he directly commits or knowingly and with criminal intent aids, abets, advises or encourages the commission of an offense whether present or not Tr., p. 191.

[11]For example, Petitioner's girlfriend, Melissa Delcour, testified that Petitioner had told her that other people "he trusted" had access to the house at 827 Northwest 114th Street with his permission. Tr., p. 175.

11

identified with drug dealing were discovered in the garage, kitchen, and master bedroom.[12] Tr., pp. 54-56, 95-109. Items were found in the master bedroom which reflected Petitioner's name including a citation (ticket); two pay stubs including one for the period ending July 19, 2003; a Cox Cable work order dated October 14, 2003, for Reginald Nicholson at 827 NW 114th St.; an Oklahoma Drivers License; a bank statement, and a check stub. Tr., pp. 100-129. Additionally, in response to an inquiry by Oklahoma City Police Officer Brad Harper, Petitioner admitted that the drugs, cash, and gun were his and that no one else was involved. Tr., p. 144. According to the trial testimony of Officer Harper, Petitioner admitted to him that he had been "doing this business for six months and that he had just got into buying a kilo of cocaine and this was his first purchase by himself purchasing cocaine and he was taking these profits and applying them back into buying more drugs." Tr., p. 145. Officer Harper also testified that Petitioner indicated he was purchasing powder cocaine and turning it into crack, enabling him to make a larger profit. *Id.*

Therefore, the undersigned finds that Petitioner has not shown that his trial was rendered fundamentally unfair nor that the OCCA's rejection of his claim in Ground One was contrary to or an unreasonable application of clearly established federal law. 28 U.S.C. § 2254(d). It is recommended that habeas relief be denied on this claim.[13]

---

[12]These other items included glassware, razor blades, a "kilo wrapper" and a one gallon Ziploc bag, all with cocaine residue, and a set of digital scales. Tr., pp. 95-109.

[13]On direct appeal Petitioner included within this claim an argument that the prosecutor "capitalized on [Petitioner's] inability to call Mr. Mathis and allowed the jury to
(continued...)

12

## II. Fourth Amendment Claim - Ground Two

In Ground Two, Petitioner asserts that the search of his residence was illegal and in violation of the Fourth and Fourteenth Amendments of the United States Constitution and the Oklahoma Constitution. Petition, p. 9. Specifically, Petitioner contends that during the initial entry into his residence the officer exceeded the allowable scope of the warrantless search and that the second entry took place without a warrant or a voluntary and knowing consent, or exigent circumstances to justify the search. *Id.*

Respondent argues that the claim Petitioner raises in Ground Two is not reviewable in a § 2254 action because the claim was fully and fairly litigated in state court. Response, pp. 12-14. In his reply, Petitioner contends, without supporting argument, that the OCCA's decision rejecting his Fourth Amendment claim "did not comport with due process and did not provide a full and fair hearing . . . ." Petitioner's Reply, p. 6.

In *Stone v. Powell*, 428 U.S. 465, 494 (1976), the Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." Such opportunity may be provided either at trial or on direct review. *Stone*, 428 U.S. at 494-95

---

[13](...continued)
make prejudicial inferences as to a missing or unidentified witness." Response, Ex. 1. p. 13 (citing Tr., p. 207). Neither the petition nor Petitioner's reply reflect a separate claim for habeas relief based on prosecutorial misconduct. In any event, Petitioner makes no showing that the prosecutor's comments rendered the trial unfair.

n. 37 ("[W]e hold only that a federal court need not apply the exclusionary rule on habeas review of a Fourth Amendment claim absent a showing that the state prisoner was denied an opportunity for a full and fair litigation of that claim at trial and on direct review ."). *See also Chavez v. Rodriguez*, 540 F.2d 500, 502 (10th Cir. 1976) (*per curiam*) (holding that a hearing on a motion to suppress and the consideration of the issue on appeal satisfied "[t]he dictates of *Stone*"); *Brown v. Sirmons*, 515 F.3d 1072, 1082-83 (10th Cir. 2008), *cert. denied*, 129 S.Ct. 403 (2008).

As Respondent contends, the record demonstrates that Petitioner had a full and fair opportunity to litigate this claim in state court. At preliminary hearing defense counsel argued in an oral motion to suppress that the search of Petitioner's home was illegal; the motion was overruled by the trial court. Preliminary Hearing Transcript, dated June 1, 2004, pp. 59-76. On the morning of trial, defense counsel reasserted the motion to suppress which the trial court denied. Tr., p. 20. On direct appeal of his conviction, Petitioner raised a Fourth Amendment claim, arguing that the officer's initial entry into his residence was illegal because there were no exigent circumstances which allowed the police to search without a warrant or consent, and even if exigent circumstances existed, the scope of the officer's search exceeded the emergency exception. Response, Ex. 1, pp. 17-31. Petitioner argued further that the evidence obtained during the second search of his home should be excluded because his consent was illegally obtained. *Id.*, pp. 31-33.

The OCCA held that the trial court properly admitted the challenged evidence, finding that:

14

> [t]he record clearly shows that the initial warrantless entry in [Petitioner's] residence was supported by probable cause and exigent circumstances. Officers then seized the evidence in plain view. This initial warrantless entry did not taint either [Petitioner's] later consent to the search that produced additional evidence of trafficking, or his subsequent confession.

Response, Ex. 3, p. 5 (citing *Horton v. California*, 496 U.S. 128 (1990)).

Petitioner's assertion that the OCCA's decision "did not comport with due process and did not provide full and fair hearing" is conclusory and without factual support. Petitioner's Reply, p. 6. Petitioner offers no explanation as to why the decision was unfair other than his disagreement with the result. As noted, the record clearly shows that Petitioner presented his Fourth Amendment challenges before trial, during trial, and again on direct appeal. His claim regarding an illegal search is therefore barred from consideration in this § 2254 proceeding. *See Stone*, 428 U.S. at 494-95. *See also Smallwood v. Gibson*, 191 F.3d 1257, 1265 (10th Cir. 1999) (affirming denial of federal habeas relief based on alleged Fourth Amendment violations pursuant to *Stone* where petitioner had moved to suppress the evidence resulting from an alleged unlawful seizure, objected to the admission of this evidence at trial and presented the issue to the OCCA on direct appeal); *Magirl v. Dorsey*, No. 98-2129, 1999 WL 273330, * 1 (10th Cir. May 5, 1999) (noting that the court was barred from considering a habeas petitioner's Fourth Amendment claims because the petitioner had "argued that the evidence should be suppressed as the fruit of an illegal arrest . . . in pre- trial proceedings [and] on direct appeal . . . ."); *Washington v. State of Oklahoma*, No. 97- 6272, 1998 WL 327866, *2 (10th Cir. June 18, 1998) (where state courts denied on the merits petitioner's challenge to the constitutionality of a nighttime search both at a suppression

15

hearing in the trial court and on direct appeal, petitioner had a full and fair opportunity to litigate his Fourth Amendment claim). Accordingly, Petitioner is not entitled to habeas relief on Ground Two.

## III. Sufficiency of the Evidence - Ground Three

As for his third ground for relief, Petitioner alleges that the evidence is insufficient to sustain his conviction of possession of a firearm in the commission of a felony (Count Three) because "there was not a nexus drawn between the firearm and the crime that was being committed." *Id.* As factual support Petitioner argued on direct appeal that he was not in the residence when the gun was found and the gun was never in his personal possession during the events leading to the charges against him. Response, Ex. 1 , p. 34.

Judicial review of Petitioner's habeas challenge to the sufficiency of the evidence presented at trial "does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit." *Herrera v. Collins*, 506 U.S. 390, 402 (1993). On federal habeas review, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). This standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson* at 319. In applying this standard, the Court "may not weigh conflicting evidence nor consider the credibility of witnesses," but must "'accept the jury's resolution of the

16

evidence as long as it is within the bounds of reason.'" *Messer v. Roberts*, 74 F. 3d 1009, 1013 (10th Cir. 1996) (quoting *Grubbs v. Hannigan*, 982 F.2d 1483, 1487 (10th Cir. 1993)). Both direct and circumstantial evidence is considered in determining whether evidence is sufficient to support a conviction. *Lucero v. Kerby*, 133 F.3d 1299, 1312 (10th Cir. 1998).

The sufficiency of the evidence inquiry is based on Oklahoma law which defines the substantive elements of the crime. *Jackson*, 443 U.S. at 309, 324 n.16. The elements of possession of a weapon during the commission of a felony are: (1) knowing, (2) willful, (3) possession of, (4) a pistol, (5) while committing a felony offense, (6) possession of the weapon in connection with the commission of the felony. Response, Ex. 5 (Jury Instruction No. 18, citing OUJI-CR 2d § 6-38) (from Original Record, Case No. CF-2003-5945). Thus, in addition to showing actual or constructive possession of a firearm, the State must show the existence of a nexus between possession of the weapon and commission of the underlying felony. *See Pebworth v. State*, 855 P.2d 605, 607 (Okla. Crim. App. 1993). To determine whether a nexus exists, Oklahoma courts examine the totality of the circumstances. *See Ott v. State*, 967 P.2d 472, 476 (Okla. Crim. App. 1998); *Pebworth v. State*, 855 P.2d at 607. Specifically, the court will consider factors which indicate that: (1) the perpetrator used the weapon to actually facilitate the commission of the offense; (2) the offender possessed the weapon or strategically located it for use during the commission of an offense; (3) the perpetrator intended to use the weapon for an escape or to use under certain contingencies; or (4) the offender planned to use the weapon in a manner which would constitute a threat

17

of harm.[14]  *See Ott*, 967 P.2d at 476; *Pebworth*, 855 P.2d at 607.

In rejecting Petitioner's sufficiency of the evidence claim, the OCCA applied the factors in *Pebworth*, *supra*, and concluded that "[t]he proximity and function of this weapon as a security measure in relation to [Petitioner's] felonious possession of drugs and cash is apparent." Response, Ex. 3, pp. 5-6. Although the OCCA did not cite *Jackson v. Virginia*, *supra*, it properly applied the identical standard and concluded that "the evidence and reasonable inferences show that a sufficient nexus between [Petitioner's] possession of the firearm and his crime of drug trafficking to permit any rational trier of fact to find beyond a reasonable doubt that [Petitioner] possessed the firearm in the commission of a felony." *Id.*, p. 6.

Contrary to Petitioner's claims, and as the OCCA found, the evidence adduced at trial amply demonstrated that he knowingly and wilfully possessed a gun while trafficking in cocaine base and possessing proceeds derived from trafficking in illegal drugs. Officer Smith was dispatched to 827 Northwest 114th Street in Oklahoma City in response to a security alarm which activated on a rear sliding glass door of the house. Tr., pp. 49-50. When Smith observed that the glass door was open approximately two inches, he and a backup officer entered through the door to investigate the alarm report. Tr., p. 53. As Smith was investigating the bathroom with his flashlight, he observed an open shoebox on a set of

---

[14] The jury was further instructed that the four factors set out in *Pebworth*, *supra,* could be considered in determining whether there was sufficient connection between the firearm and the commission of the felony.  Response, Ex. 5 (Instruction No. 18).

shelves which contained a large amount of cash ($1200), a gun, and bags containing what he believed to be crack cocaine. Tr., pp. 54-55, 91. It was later determined that the firearm was a Glock 27, a .40 caliber semi automatic weapon, with nine bullets loaded in a magazine, Tr. pp. 55; 88-89, and that the plastic bags contained over 635 grams of crack cocaine, Tr., pp. 165-68.

Petitioner, who had arrived and identified himself as the owner of the house, was placed under investigative detention. Tr., pp. 57-58. Officer Brad Harper advised Petitioner of his *Miranda* rights, and Petitioner gave his written consent for the police to search his house. Tr., pp. 142-44. Soon thereafter Petitioner initiated a conversation with Officer Harper and admitted that the cocaine, the money, and the gun were his and that no one else was involved. *Id.* Petitioner further stated that he had been in "business" for about six months and the money was being used to acquire powder cocaine to convert to crack cocaine so he could make larger profits. Tr., p. 145. At trial various documents, including a Cox Communications bill, a pay stub, and an Oklahoma driver's license indicated the home was Petitioner's residence. Tr., pp. 121-33.

Viewing the evidence in the light most favorable to the State, the undersigned finds that a reasonable fact-finder could have determined that Petitioner had actual or constructive possession of the firearm. Additionally, the fact-finder could reasonably have found a nexus between the firearm and Petitioner's commission of the underlying felonies. This nexus was reflected by the strategic location of the firearm in close proximity to the illegal drugs and the large amount of money. Therefore, the OCCA's rejection of Petitioner's sufficiency of

the evidence claim was neither contrary to nor an unreasonable application of *Jackson v. Virginia*, *supra*. Nor has Petitioner shown that the OCCA's decision was based on an unreasonable determination of the facts in light of the evidence presented at his trial. Accordingly, Petitioner is not entitled to habeas relief on his challenge to the sufficiency of the evidence on the conviction involving unlawful possession of a firearm in the commission of a felony.

## **RECOMMENDATION**

Based upon the foregoing analysis, it is recommended that the petition for a writ of habeas corpus be denied. Petitioner is advised of his right to file an objection to this Report and Recommendation with the Clerk of this Court by March 29, 2010, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. Petitioner is further advised that failure to make timely objection to this Report and Recommendation waives his right to appellate review of both factual and legal questions contained herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991). This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter.

ENTERED this 9th day of March, 2010.

BANA ROBERTS
UNITED STATES MAGISTRATE JUDGE